# UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| KAREN MIRANDA GLEASON,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID L. BERHARDT, Secretary, U.S. DEPARTMENT OF THE INTERIOR,<br><br>Defendant. | Case No.: 1:20-cv-00474-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Dkt. 17)** |

Pending is Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. 17), in which Defendants seek dismissal of all the claims raised in Plaintiff's Complaint. The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. 25). Having carefully considered the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Karen Gleason was employed during the time frame relevant to this lawsuit as a Public Affairs Specialist with the Boise office of the U.S. Fish and Wildlife Service. She has bipolar disorder, also known as manic depression. Between 2005 and 2017, she alleges that a series of supervisors engaged in unlawful acts of discrimination against her based on her gender

**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS - 1**

and a disability, retaliated against her based on protected activity, and created a hostile work environment.

Defendant moves to dismiss all claims. First, Defendant argues that that most of Plaintiff's allegations cannot support her discrimination or retaliation claims because she failed to contact an Equal Employment Opportunity ("EEO") counselor within 45 days after such acts. Second, Defendant argues that although a handful of acts occurred within the 45-day window or occurred after the filing of her claim, none of those particular acts materially affected the terms and conditions of her employment, nor did any of them result in a significant change to her employment duties. Third, Defendant argues that facts alleged in the Complaint do not support an inference that gender, disability, or purported protected activity played any role in any of the actions that are not time barred. Fourth and finally, Defendant challenges the adequacy of Plaintiff's hostile work environment claim, arguing that there are no facts to support an inference that her work environment was objectively hostile, or that the purported hostility arose *because of* her gender, disability status, or purported protected activity. Defendant's Brief, Dkt. 17-1 at p. 2.

For the reasons discussed below, the Court finds that Plaintiff can proceed on her claims for retaliation, disability discrimination and for a hostile work environment based upon her disability status and prior protected activity. However, she may not proceed on her claims for sex discrimination or for a hostile work environment based on her gender.

## LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "must take all of the factual allegations in the complaint as true," but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678; *see also Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comm. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (citation omitted).

## DISCUSSION

### I. Plaintiff's Claims Are Not Time Barred

A federal civil servant must first exhaust her administrative remedies before she can sue her employer for discrimination in violation of Title VII. *Green v. Brennan,* 136 S.Ct. 1769 (2016). As part of this process, the employee must initiate contact with an EEO Counselor within 45 days of the date of any allegedly discriminatory conduct, or within 45 days of an adverse employment action. *Id*. at 1775. These requirements, which apply only to the federal workforce, are the analog of the 180-day or 300-day periods which apply to private sector employees seeking to bring discrimination claims under Title VII.

Here, Plaintiff alleges that her supervisors engaged in a course of discriminatory, retaliatory, and hostile conduct dating as far back as 2005. However, she did not seek the

assistance of an EEO counselor until February 17, 2017. Defendant, therefore, contends that any alleged conduct occurring before January 3, 2017, the last day of the 45-day lookback period, cannot form the basis for a claim.

In cases dealing with the private sector counterpart to the 45-day rule discussed above, the United States Supreme Court has ruled that discrete discriminatory acts occurring earlier than the relevant lookback period are time-barred, even when the actions which predate the lookback period otherwise relate to timely filed charges. *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 108-14, 122 S.Ct. 2061, 2069-2073 (2002) (overruling Ninth Circuit case law allowing a plaintiff to escape the effects of the relevant lookback period by alleging a continuing course of discriminatory conduct).

The ruling in *Morgan* only applies, however, to claims for discrimination and retaliation. In contrast, for hostile work environment claims, "the unlawful employment practice . . . cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.,* 536 U.S. at 115, 122 S.Ct at 2073-2074. Thus, according to the *Morgan* court, "a hostile work environment claim ... will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the [applicable statutory time period]." *Id.,* 536 U.S. at 122, 122 S.Ct. at 2077. *See also, Porter v. California Dept. of Corrections,* 419 F.3d 885 (9th Cir. 2005). Finally, even though acts falling before the earliest day of the 45 day look back period are not independently actionable, they may be used as background evidence in support of a timely claim. *Morgan,* 536 U.S. at 113, 122 S.Ct. at 2072. Such background evidence can be used, for example, as proof of discriminatory intent. *Lyons v. England,* 307 F.3d 1092, 1111-1112 (9th Cir. 2002).

**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS - 4**

Applying these rules leaves Plaintiff's claims for disability discrimination, sex discrimination, and retaliation intact only to the extent that conduct occurring on or after January 3, 2017 independently gives rise to such claims. The claims for hostile work environment, on the other hand, survive if she has alleged at least one sufficiently hostile act that falls within the 45-day time period, and any such act or acts are part of the same illegal employment practice. Of course, Plaintiff must also adequately plead the remaining elements of her various claims.

### A. Events Occurring After January 3, 2017 Independently Gives Rise to Disability Discrimination and Retaliation Claims.

Plaintiff's claim for disability discrimination under the Rehabilitation Act requires proof of the following elements: 1) that she is disabled within the meaning of the Rehabilitation Act; 2) that she is otherwise qualified for the position; and 3) that she was discriminated against based on her disability. *Williams v. O'Neill,* 23 Fed. Appx. 738, 739-40 (9th Cir. 2001) (*citing Snead v. Metro. Prop. & Cas. Ins. Co.,* 237 F.3d 1080, 1087 (9th Cir. 2001). A prima facie claim for retaliation requires a plaintiff to show that 1) she engaged in protected activity; 2) the defendant subjected her to an adverse employment action, and 3) that there is a causal link between her protected activity and adverse employment action. *Ray v. Henderson,* 217 F.3d 1234, 1240 (9th Cir. 2000). Besides arguing that no discriminatory conduct or adverse employment action occurred during or after the applicable 45-day time frame, Defendant also argues that Plaintiff has not pleaded facts alleging that there was a causal link between the allegedly adverse employment actions and her disability or prior protected activity.

#### 1. Post January 3, 2017 Conduct

While much of the conduct discussed in the complaint did occur prior to January 3, 2017, some of the alleged facts concern conduct that occurred on or after that date. A number of these

**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS - 5**

actions, read in the light most favorable to the Plaintiff and making all reasonable inferences in her favor, could be said to be discriminatory. Potentially discriminatory actions that occurred within the relevant time frame include: 1) the five-day suspension that Plaintiff received on January 3, 2017; 2) denial of training opportunities that continued into the summer of 2017; and 3) continued isolation from co-workers and denial of Plaintiff's requests to move to a more desirable office location. While this is not an exhaustive list of post-January 3, 2017 conduct, the Court need not address every single instance of such conduct in order to conclude that Plaintiff has pled sufficient facts to allege that at least some potentially discriminatory acts that are not time barred.

Defendant does not argue that the five-day suspension that was issued on January 3, 2017 cannot, at least potentially, constitute an adverse employment action. In fact, the only argument Defendant makes as to why the five-day suspension should not "count" stems from the fact that the supervisor who issued the suspension dated it December 26, 2016, suggesting that Defendant began the process of suspension some days before the notice was actually issued to Plaintiff. This fact, Defendant argues, undercuts Plaintiff's assertion that Defendant acted in retaliation for her protected EEO activity. Defense Brief, Dkt. 17-1 at 14. However, even if Defendant began the process of suspension earlier than January 3, 2017, the suspension did not take hold until January 3, 2017. Perhaps Defendant could argue that the earlier date supports an argument of a non-discriminatory motive for the suspension, but such an argument is not a basis on which to grant a motion to dismiss the claim. These are not issues that can be resolved on a motion to dismiss, where even under the somewhat more stringent standards articulated by *Iqbal* and *Twombly*, the Court is still required to view the alleged facts in the light most favorable to Plaintiff and make all reasonable inferences in her favor. Further, there are sufficient facts

alleged in the Complaint to suggest that Plaintiff had engaged in other protected activity well before raising the issue of her suspension with the EEO in early 2017. While under *Morgan* and progeny, a defendant's conduct that forms the *basis* for the cause of action must occur during or after the 45-day time frame in order for a claim not to be time barred, there is nothing in this line of cases to suggest that protected activity that arguably provides a *motive* for a defendant's discriminatory acts must also fall within that same time frame.

Regarding the denial of training opportunities, some courts have held that denial of such opportunities, without more, cannot constitute adverse employment action for purposes of a discrimination or hostile work environment claim. *See, e.g. Clegg v. Arkansas Dept. of Corrections,* 496 F.3d 922 (8th Cir. 2007); *Shakelford v. Deloitte & Touche, LLP,* 190 F.3d 398 (406-07) (5th Cir. 1999). However, here Plaintiff has alleged that the training she sought to undertake was necessary for further professional advancement. Plaintiff's Brief, Dkt. 26 at p. 12 and Complaint at 12-130, 133-134. She also alleges that at least one similarly situated employee, without a disability or EEO activity, was afforded opportunities like the ones Plaintiff was denied. *Id.* at 130. Read most favorably to her, the Complaint suggests that the training could have led to a promotion or salary increase and/or that her career was impaired by not taking the training. *Cf, Arbigon v. Multnomah Co.* 2010 WL 2038839 (D. Oregon 2010) (denial of training that prevents an employee from learning his or her job properly constitutes an adverse employment action); *Cf. Hess v. Multnomah County*, 216 F.Supp.2d 1140, 1154 (D.Or.2001) (dismissing claim but suggesting that denial of training may constitute an adverse employment action if plaintiff had offered evidence that the training would have resulted in a promotion or a salary increase or that her career was significantly impaired by not taking the training). Accordingly, Plaintiff has alleged something beyond than the mere denial of training

**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS - 7**

opportunities such that the denial of these opportunities may be said to constitute adverse employment action.

Finally, the alleged isolation of Plaintiff in a separate office building can also be said to constitute adverse employment action. Plaintiff says that this did not begin in 2017 but the issue was ongoing at that time, as Plaintiff continued her requests to be transferred to a window office in the main building, as opposed to in a separate building where few employees worked, which kept her isolated from her co-workers. While employers are allowed to exercise control over things like the location of employee workstations, several Circuit courts have held that such control which isolates an employee from co-workers can constitute an adverse employment action if the isolation makes it more difficult for an employee to do her job. *See, e.g., Lederberger v. Stangler,* 122 F.3d 1142 (8th Cir. 1997); *Flaherty v. Gas Research Inst.* 31 F.3d 451, 456–57 (7th Cir.1994). Further, actions taken against an employee need not be "severe" to nonetheless be adverse. "[A plaintiff] need not show that she was fired, demoted, or suffered some financial loss...." *McAlindin v. County of San Diego,* 192 F.3d 1226 (9th Cir 2011) (quoting *Bouman v. Block*, 940 F.2d 1211, 1229 (9th Cir.1991)). Viewing the allegations in the light most favorable to the Plaintiff, her isolation in a separate office building could potentially constitute an adverse employment action.

The Court also concludes that Plaintiff has adequately alleged a causal link between her disability and her protected activity, on one hand, and the adverse employment actions she alleges, on the other. As discussed above, Plaintiff is correct that events occurring prior to January 3, 2017 may be used as evidence of a defendant's intent or discriminatory animus. Read most favorably to the Plaintiff, the narrative of events alleged in her Complaint suggests a causal

link between Plaintiff's disability, her protected EEO activity, and the adverse employment actions that occurred after January 3, 2017. Complaint at ¶¶ 6-140; Plaintiff's Brief at 7.

> II. **Plaintiff's Claims for Hostile Work Environment Based on Disability and Prior EEO Activity**

Next, the Court concludes that Plaintiff has adequately pled a claim for hostile work environment based on her disability status and prior protected EEO activity. She is required to allege facts tending to suggest that 1) she was subjected to verbal or physical conduct because of her disability or EEO activity; 2) the conduct was unwelcome and 3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and crate an abusive or hostile work environment. *See, e.g. Fuller v. City of Oakland,* 47 F.3d 2522, 1527 (9th Cir. 1995).

Plaintiff has alleged facts to support both these elements and – with respect to the issue of timeliness – meet the constraints of the Supreme Court's decision in *Morgan.* As explained above, Plaintiff has alleged that at least some acts that she contends were hostile and adverse employment actions occurred after January 3, 2017. Further, the earlier actions can be viewed as part of the same unlawful employment practice, at least when viewing the allegations in the light most favorable to Plaintiff. This conclusion tracks, as well, with the Ninth Circuit's decision in *Porter v. California Dept of Corrections,* 419 F.3d 885 (9th Cir. 2005), which the Court reads to stand for the proposition that in deciding issues of timeliness in the context of a hostile work environment claim, there must be some continuity between older acts which would be time barred and more recent acts which are not time barred.[1] Here, that continuity is present.

---

[1] The issue before the Court in *Porter* was whether a Plaintiff's claim for a hostile work environment based on sex, was time barred for failure to grieve the issues with an EEO counselor within the relevant statutory time frame. The difficulty in the *Porter* case was the most flagrant examples of harassing conduct (overt propositions, spitting in plaintiff's food when she

**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS - 9**

Defendant also argues that the problems Plaintiff alleges in her Complaint were not so pervasive as to create a hostile work environment. The Court disagrees, at least insofar as Plaintiff is claiming a hostile work environment resulting from her supervisors' alleged animus towards her disability and prior EEO activity. Her Complaint describes more than just a few isolated instances of untoward behavior from co-workers or supervisors. Rather, the Complaint describes a situation in which small problems mushroomed into larger ones, as, Plaintiff alleges, her supervisors and co-workers over time became increasingly hostile towards her. Plaintiff has alleged that her supervisors and many of her co-workers knew of her disability and/or of her prior EEO activity. The Complaint also alleges that as time went on, tensions between Plaintiff and her supervisors increased, and she was increasingly subject to accusations of emotionalism, aggression, inability to work in groups, all of which Plaintiff characterizes as false. She also alleges that due to her managers' incorrect perception of her as emotional and unstable, she was isolated from co-workers in a separate building, and denied the opportunity to attend training details that would have furthered her career. She further alleges that she was constructively denied these detail opportunities when supervisors set unusual conditions on them, such as a

---

did not accept) were old actions that would have been time barred had they been independent causes of action, whereas the conduct that was *not* time barred was of a much milder nature, and in some instances had nothing to do with sex or sexual harassment at all. In other words, the character of Porter's working environment had changed over time, and arguably improved, as the supervisors who had been harassing her toned their behavior down. The court held "[W]e refuse to mix recent discrete acts like tinder with the planks of ancient sexual advances and then, regardless of whatever it was that set the spark in the furnace, call the fire that ignites therefrom a hostile environment. If the flames of an allegedly hostile environment are to rise to the level of an actionable claim, they must do so based on the fuel of timely-non-discrete acts." Id. at 893. Ultimately, however, the court concluded that Porter had shown that there was a genuine issue of fact on her hostile work environment claim, because her supervisors, though they had toned their behavior down, still had exhibited some sex-based hostility to her during the crucial time period. In this case, the actions that Plaintiff timely grieved were more similar in character and degree of severity to the older actions than was the case in Porter.

**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS - 10**

requirement that she keep up with ordinary responsibilities during the training detail, that did not ordinarily apply in such situations. A reasonable person reading the factual narrative of Plaintiff's Complaint, without knowing anything more and without hearing from Defendants, could certainly conclude that she may well have been the victim of a hostile work environment stemming from her disability and/or her prior EEO activity. Complaint at ¶¶ 6-140.

### D. Sex Discrimination Claims.

Plaintiff's claims for sex discrimination, however, as well as her claim for a hostile work environment based on sex, are subject to dismissal. In this instance, Defendant is correct that Plaintiff has not alleged facts sufficient to establish a connection between her gender and the adverse employment actions she experienced. The only facts even remotely supporting the notion that Plaintiff was subject to discrimination based on sex are the allegations suggesting that she was occasionally accused of being "too emotional." While such a comment might theoretically be taken as evidence of discriminatory animus towards women, there are no other facts supporting that conclusion. The overall thinness of the allegations with respect to sex discrimination specifically puts this claim in the realm of the theoretically possible, but not plausible. As such, this claim is subject to dismissal under the strictures of *Iqbal* and *Twombly*. Likewise, the allegations in the Complaint are likewise too thin to plausibly suggest that that the hostile work environment related specifically to her sex, as opposed to her disability or prior EEO activity. Accordingly, the Court dismisses these claims, albeit with leave to amend.

### CONCLUSION

For all the foregoing reasons the Court concludes that Plaintiff's Complaint adequately states claims for retaliation, disability discrimination, and hostile work environment based on

disability and protected activity, but not for sex discrimination or a hostile work environment based on gender.[2]

## ORDER

Defendant's Motion to Dismiss (Dkt. 17) is **GRANTED IN PART** with Respect to Counts 1 and 2, and **DENIED** as to Counts 3, 4, 5, and 6.

Plaintiff may amend her Compliant with respect to Counts 1 and 2, if she desires to do so, within **FOURTEEN (14)** days of the date of this Order.

DATED: May 28, 2021

Honorable Ronald E. Bush
Chief U.S. Magistrate Judge

---

[2] Nothing in this Order should be taken as an indication that the Court has, at this early stage of the game, made any ruling as matter of law. Defendant is free to re-raise these same issues in the context of a summary judgment motion, if it believes that a different conclusion may be warranted with the benefit of a more developed record.

**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS - 12**